Robert R. GREBING, Plaintiff-Appellant,

v.

FIRST NATIONAL BANK OF CAPE GIRARDEAU, Missouri, a National Banking Corporation and, St. Louis Union Trust Company, a Corporation, and C. A. Juden, Richard Swaim, Gilbert Logel, Robert Ludwig, Elaine Helen Eagle, Patsy Donaldson, and Joan Jones, and their successors as members of the Administrative Committee of the Profit Sharing Plan of the First National Bank of Cape Girardeau, Mo., Defendants-Respondents.

No. 41496.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 10, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 13, 1981.

Application to Transfer Denied May 11, 1981.

Kenneth L. Waldron, Jackson, for plaintiff-appellant.

Richard G. Steele, Finch, Bradshaw, Strom & Steele, Cape Girardeau, for defendants-respondents.

SATZ, Judge.

This is an action for declaratory judgment. Plaintiff Robert Grebing, had been an employee of the defendant First National Bank of Cape Girardeau (Bank). During his tenure at the Bank, plaintiff had accrued an interest in the Bank's noncontributory profit sharing pension plan. Plaintiff went to work for a competitor of the Bank, which triggered a forfeiture provision in the plan. Plaintiff filed suit against the defendant Bank, against defendant St. Louis Union Trust Company as the Trustee managing the assets of the plan and against the other named defendants as members of the Administrative Committee implementing the plan. Plaintiff sought a declaration that the forfeiture provision in the plan was an unreasonable restraint of trade, or, in the alternative, that the defendants waived the right to enforce the forfeiture provision and that he was owed $9,136.47 plus interest as his distributive share under the plan. After trial to the Court, judgment was entered in favor of defendants. Plaintiff appeals. We affirm.

In this court-tried case, we review the record under the well known principles of

*Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976).

Plaintiff was employed by the Bank from August, 1959, to March 26, 1971. He was given on-the-job training and sent to several seminars, schools and meetings to improve his skills. At the time he left the Bank, he was Vice President and Loan Officer.

On October 24, 1960, the Bank established a noncontributory profit sharing plan for its employees "to promote in them the strongest interest in the successful operation of the business and increased efficiency in their work, to assure them that they will share in the prosperity of the business and to provide an opportunity for an accumulation of funds for their retirement". The plan provided that an employee's share would be fully vested after 10 years of employment. Plaintiff's rights became fully vested in August of 1969, subject to a forfeiture provision in the plan. The forfeiture provision, Article X, "Limitation of Benefits", provided:

> "In the event a participant is guilty of embezzlement or accepts employment with a competitor of the Employer, such participant shall forfeit all rights and benefits accrued and payable under this plan."

Plaintiff left his employment at the Bank in March, 1971. A day and a half later, he began working as Vice President and Trust Officer at Jackson Exchange Bank in Jackson, Missouri. The parties stipulated that the Jackson Bank was a competitor of the defendant Bank. Because plaintiff had accepted employment with a competitor, the Administrative Committee relied on Article X, the forfeiture provision, to deny plaintiff his distributive share under the plan.[1]

Plaintiff first contends the forfeiture provision has the same effect as a covenant not to compete and should be subject to the same limitations. Since the forfeiture provision is unrestricted as to time and geographic area, plaintiff reasons, the provision, like an unrestricted covenant not to compete, is an unreasonable restraint of trade and, therefore, is void. We disagree.

By definition, covenants by employees not to compete with their employers after termination of their employment restrain trade in a free market. Therefore, in our society, these covenants may be against public policy, and, thus, are enforceable only if their imposed restraint is reasonable. *Orchard Container Corp. v. Orchard*, 601 S.W.2d 299, 303 (Mo.App.1980); *Reed, Roberts Assn., Inc. v. Barlenson*, 537 S.W.2d 238, 241 (Mo.App.1976). The determination of reasonableness depends upon the competing needs of the parties as well as the needs of the public. These needs are: (1) the employer's need to protect legitimate business interests, such as trade secrets and customer lists, (2) the employee's need to earn a living, and (3) the public's need to secure the employee's presence in the labor pool, *see Renwood Food Products v. Schaeffer*, 240 Mo.App. 939, 223 S.W.2d 144, 150–151 (1949). Obviously, in the present case, we are not confronted with a covenant not to compete. We do not have an employee's express promise not to compete after termination of employment. Rather, we have a penalty, a forfeiture of benefits, imposed on the employee if he does compete after termination of employment. Thus, we must first determine whether this distinction removes the forfeiture provision from the restraint of trade category and, so eliminates the need to determine whether the provision is reasonable.

In Missouri, we have not decided whether the forfeiture provision like the one in issue is in effect a covenant not to compete. However, other jurisdictions have, and two views have developed. Ac-

---

1. The Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA) was enacted on September 2, 1974, some three years after plaintiff's termination of employment.

cording to the majority view, a forfeiture provision like the one in issue is not a restraint of trade and, thus, the provision does not require the scrutiny of the Court to determine whether it is reasonable. *See Rochester Corp. v. Rochester*, 450 F.2d 118 (4th Cir. 1971); *Dollgener v. Robertson Fleet Services, Inc.*, 527 S.W.2d 277 (Tex. Civ.App.1975) and cases cited therein; *Hudson v. North Carolina Farm Bureau Mut. Ins. Co., Inc.*, 23 N.C.App. 501, 209 S.E.2d 416 (1974); *Van Pelt v. Berefco, Inc.*, 60 Ill.App.2d 415, 208 N.E.2d 858 (1965); *Annot.*, 18 A.L.R.3d 1246 (1968). These Courts reason that the forfeiture, unlike the restraint included in an employment contract, does not prohibit the employee from engaging in competitive work but merely denies him the right to participate in the profit sharing plan if he does so engage. *Rochester Corp. v. Rochester, supra* at 123. Thus, the employee is not necessarily prohibited from earning a living in his chosen vocation or trade nor is the public necessarily deprived of the employee's skills and services.

A significant minority of jurisdictions have adopted a different position. They hold that the threat of economic loss to an employee should he engage in business competition is a restraint of trade. *See Food Fair Stores, Inc. v. Greeley*, 264 Md. 105, 285 A.2d 632 (1972); *Almers v. South Carolina Nat'l. Bank of Charleston*, 265 S.C. 48, 217 S.E.2d 135 (1975); *Holsen v. Marshall and Ilsley Bank*, 52 Wis.2d 281, 190 N.W.2d 189 (1971). These courts reason that " . . . '[a]lthough the agreement is not expressed as a restriction against competition by the employee, its undoubted object and effect is that of a powerful deterrent to the employee's exercise of the right to compete, partic-

ularly where . . . the penalty involved is a substantial sum of money' ". *Holsen v. Marshall and Ilsley Bank, supra* 190 N.W.2d at 191.

As noted, neither view has been expressly adopted in Missouri. However, our Supreme Court, in dictum, has indicated its approval of the majority view. In *Alldredge v. City National Bank and Trust Co. of Kansas City*, 468 S.W.2d 1, 4 (Mo.1971), the plaintiff, like the plaintiff here, had accrued an interest in a corporate noncontributory profit sharing plan, subject to forfeiture if he left the corporation and entered into competition with it. A summary judgment was entered in favor of the defendant successor corporation whose defense against payment was the forfeiture provision. In reversing the summary judgment because of the existence of a genuine issue of fact, the Court stated: L.C. 4

"Except where by statute noncompetition agreements such as that involved in this case are invalidated, [citations omitted],[2] it is the general rule that the employer may provide as a part of a noncontributory profit sharing plan that a former employe's interest may be declared forfeited in the event of competitive activities. Such a provision is not invalid because it is unrestricted either as to time or area. The reasoning is that the former employe is not prohibited from engaging in such employment or activity, but may do so if he wishes. However, he may not, when the agreement calls for a forfeiture of interest by reason of competitive activities, be entitled to the benefits of a retirement plan to which he contributed nothing..., [I]f [the disputed fact] was as would be testified to by the president

---

**2.** Our Supreme Court cited *Muggill v. Reuben H. Donnelley Corp.*, 62 Cal.2d 239, 42 Cal.Rptr. 107, 398 P.2d 147 (1965) as an example of a jurisdiction where a forfeiture provision like the one in issue here is invalidated by statute. The relevant California statute provides that "every contract by which anyone *is* restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void". Cal.Bus. & Prof.Code § 16600 (West 1964).

Missouri has a similar but not identical statute which provides "every contract, combination, or conspiracy in restraint of trade or commerce is unlawful". § 416.031 RSMo 1978. The latter statute was not relied on or referred to by the parties in the present case, and the predecessor and counterpart of this statute, § 416.-010 RSMo 1969, was not referred to by the Court in the *Alldredge* case, *supra*.

of the [successor corporation], it would appear that this case would properly be ruled under the theory of *Van Pelt v. Berefco, Inc., supra.*" [The majority view].

As noted, this approval is dictum and, thus, not controlling. However, while we recognize the appeal of the minority view, we choose to follow the clear indication of the view of our Supreme Court, particularly since it comports with a cogent and rational view expressed by the courts in a majority of jurisdictions. We agree with the trial judge. The forfeiture provision in issue is not a restraint of trade and is valid and enforceable.

Plaintiff next argues defendants waived the right to enforce the forfeiture provision. Plaintiff argues the defendants' conduct implies this waiver. More specifically, plaintiff argues the defendants waived the right by taking no action to recover benefits paid to three other employees who went to work for competitors and by permitting the Bank's president to accrue benefits under the plan while he received money for services rendered to a competitor. We disagree.

■ Waiver is the intentional relinquishment of a known right. *Bartleman v. Humphrey,* 441 S.W.2d 335, 343 (Mo.1969). The intent of the party charged with waiver is controlling. If intent is implied by conduct, as would be necessary here, there must be a clear, unequivocal and decisive act implying the intent and the implication must be so consistent with an intention to waive that no other reasonable explanation is possible. *Bartleman v. Humphrey, supra* at 343. Here the evidence did show that three other Bank employees left their jobs and were paid benefits under the profit sharing plan. At varying times later, each went to work for a competitor. However, there was no evidence showing that, prior to making any one of the benefit payments,

defendants were aware the employees intended to work for a Bank competitor. Thus, none of these three employees were in precisely the same situation as plaintiff. Further, the trial court found that the activities of the Bank president did not constitute employment with a Bank competitor within the contemplation of the forfeiture provision. There was ample evidence to support this finding and we have no reason to disturb it. Also, we note that the Bank president never requested payment of benefits and, thus, was not in the same position as plaintiff. The foregoing conduct of defendants related to people who were not similarly situated to plaintiff. Thus, contrary to plaintiff's contention, this conduct was not so unequivocal that it necessarily implied an intent to waive the right to enforce the forfeiture provision.[3]

■ Plaintiff also contends the trial court erred by finding plaintiff's petition was filed more than five years after he left the Bank. He does not contest the accuracy of the finding, but, rather he attacks the finding because it could give rise to "an oblique or improper reference (sic) that a five year statute of limitations applied to the case at bar". Similarly, plaintiff contends the trial court erred by finding that an award of benefits to plaintiff would disproportionately affect the remaining participants in the plan. Plaintiff attacks this finding because it could give rise to "a further oblique or improper reference (sic) that plaintiff may have waited too long to commence suit". Apparently, plaintiff contends this finding improperly implies that laches would bar plaintiff's cause of action. The trial court did not apply the statute of limitations or laches in reaching its judgment. Plaintiff admits this in his brief. In these points, then, plaintiff does not attack any finding of fact or conclusion of law made by the trial court. He attacks only inferences which may arise from the trial

---

**3.** Plaintiff did not testify. However, there was testimony that plaintiff believed he would shortly recoup his lost benefits from his salary at the competitor bank. Understandably, plaintiff did not argue estoppel.

court findings. Our review is limited to whether the facts found by the trial court are supported by the evidence and to whether the trial court correctly declared and applied the law. *Murphy v. Carron, supra.* We do not reverse a judgment simply because improper inferences might be drawn from correct findings of fact. These contentions are without merit.

Judgment affirmed.

WEIER, P. J., and SIMON, J., concur.