Calvin L. CAULFIELD, Appellant,

v.

GEORGE K. BAUM & COMPANY, INC., Respondents.

No. WD 32975.

Missouri Court of Appeals, Western District.

Feb. 1, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 29, 1983.

Application to Transfer Denied May 31, 1983.

George E. Leonard, Russell S. Jones, Jr., Kansas City, for respondents.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The plaintiff Calvin Caulfield appeals from an adverse judgment in a court-tried case on his petition to recover funds in his profit sharing account, withheld by his former employer George K. Baum & Company (Company) and the trustee First National Bank. The trial court judgment is affirmed.

The case was submitted on a stipulation of facts plus the testimony of Caulfield. The Company buys and sells municipal bonds and investment securities. Caulfield joined the Company as a salesman in 1958, Caulfield was a member beginning in 1960 until January 31, 1972 when he terminated the employment through a written resignation. Caulfield went directly to the employ of Stern Brothers, whose business was the same as the Company's and is also located in Kansas City, Missouri. At the time he left the company Caulfield had $24,942.93 vested in his account in the Profit Sharing Plan. His demand for this money was denied by the Advisory Committee for the Plan after a hearing before the Committee as provided by the Plan.[1] The denial by the Committee of Caulfield's claim was ascribed to § 7.6 of the Plan which read in pertinent part:

"If after the Separation Date of any ... Terminated Member, ... the Committee shall ..., receive or acquire evidence that the ... Terminated Member has been ... competing (as hereinafter defined) within 5 years after his Separation Date with the Company without its written consent, and if all of the members of the Committee, after first affording such ...

Charles E. Hammond, Howard E. Bodney, Kansas City, for appellant.

1. According to the Plan the Advisory Committee is composed of three persons appointed by the Board with authority to construe and interpret the Plan to determine the rights and interests of anyone claiming an interest in the Plan.

Any determination made in good faith by the Committee was to be final and conclusive. One of the members of the Committee at the time in question was the President, George K. Baum.

Member an opportunity to present to the Committee such evidence as he may wish, in good faith shall believe that such . . . Member shall have been competing with the Company within such period and shall so state in writing to the Company, to the . . . Member . . ., (and to the Trustee) that all units then standing to the credit of such member . . ., shall be forfeited . . . . A Retired or Terminated Member shall be deemed to be competing with the Company if in any state wherein the Company at the time of reference maintains an established place of business, such Retired or Terminated Member, as an individual, partner, employee or otherwise, shall directly or indirectly engage in, work for, render service to, or permit the use of his name in connection with any type of business which at the time is being engaged in by the Company."

Following the Committee's denial this suit was filed in April, 1977. It was agreed, that prior to Caulfield's leaving several former company employees had resigned, and either had gone to work for competitors or started a firm competing with the Company but, nevertheless had been paid the vested portion of their profit sharing funds. One employee left in May 1962 and received $59.55, one leaving in 1963 received $114.94 and one terminated in 1969 received $476.93. None of the three had written permission from the Company to engage in the sale of municipal bonds or investment securities.

The plaintiff testified that a Mr. McCarthy, a Vice President and the Sales Manager of the Company was the only person at the Company to keep a copy of the Plan. He stated McCarthy, a lawyer, told him the non-competition clause in the Plan had been waived as to the three former employees and if Caulfield terminated employment in the Company it ". . . would more than likely waive" this clause as to him. Caulfield's attorney immediately asked him whether McCarthy's words were "more than likely" or more specific. Caulfield then answered, McCarthy's words were "without any question". Caulfield testified he would not have left the Company but for the state-

ments of McCarthy. McCarthy was not a member of the Committee and did not testify at trial. Plaintiff testified when he resigned there was much animosity and ill will between himself and Mr. Baum, which resulted in loud arguments, punctuated with profanity between the two and this made it impossible for him to remain with the Company under any circumstances.

In rendering judgment for the Company, the trial court noted the three other employees who were allowed to collect benefits, were not in the same situation as Caulfield (the amounts involved were too small to contest) and the credibility of the plaintiff was suspect with regard to his reliance on McCarthy's statements because of his having to be prompted as to McCarthy's statements ("more than likely"—"without any question"). The judge also noted Caulfield did not relate the McCarthy statements at the hearing before the Advisory Committee held three months after he left, but this alleged conversation upon which he claimed to rely came to light some nine years later involving his testimony at this trial.

■■■ Review of this bench tried case is governed by Rule 73.01 as set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Before concluding the judgment to be against the weight of the evidence the appellate court must be of a firm belief it is wrong. *McClelland v. Williamson*, 627 S.W.2d 94, 96 (Mo.App.1982). Since the findings of the court were based in part on Caulfield's testimony, deference is given to its determination of Caulfield's credibility. *Trenton Trust Co. v. Western Sur. Co.*, 599 S.W.2d 481, 494 (Mo. banc 1980). Judicial review of the acts of trustees (the Advisory Committee) of a noncontributory profit sharing plan is limited to determining if they acted "arbitrarily, capriciously, or in bad faith". *Miller v. Associated Pension Trusts, Inc.*, 541 F.2d 726, 728–29 (8th Cir. 1976), and whether their action is supported by substantial evidence, *Ehrle v. Bank Building & Equipment Corporation of America*, 530 S.W.2d 482, 494 (Mo.App. 1975).

■ For his first point Caulfield contends the trial court erred in not finding the treatment of himself, as compared to the three employees who left earlier and then competed with the Company, discriminatory. He states the Committee's action violated § 8.1 of the Plan which provides that members of the Advisory Committee have a duty to treat terminated members, "with equal consideration, impartiality and fairness," as other employees. The order of the trial court noted the paying of the vested amounts ($59.55, $114.96 and $476.93) to the former employees without going through hearings before the Advisory Committee did not amount to a waiver by the Company of the non-compete provision as to when plaintiff terminated as the former employees "were not in the same situation as plaintiff" ... *Grebing v. First National Bank of Cape Girardeau,* 613 S.W.2d 872, 875–76 (Mo.App.1981).[2] The Company correctly notes the non-enforcement as to these small amounts (*de minimis*) involving employees who left in the 1960's is explainable because the case of *Allredge v. The City National Bank and Trust Co. of Kansas City,* 468 S.W.2d 1 (Mo.1971), had not been handed down which for the first time upheld in Missouri a forfeiture clause in a profit sharing plan based upon competitive activities. The *Allredge* rationale is explained in *Grebing, supra.*[3]

In *Fine v. Semet,* 514 F.Supp. 34 (S.D.Fla. 1981), the plaintiff terminated his position in a law firm and requested a lump sum payment of over $48,000 representing his accrued benefits. The plaintiff claimed the defendants denying him this payment when others had received lump sum checks, albeit for much smaller amounts, was arbitrary. The plaintiff's portion in *Fine* represented 14% of the Plan's assets making its sudden loss detrimental to the Plan and was held not to be arbitrary Committee action. That the Committee here chose not to contest smaller payments and thereby spend considerable money on hearings and counsel fees which would be charged to the Plan, was justified.

Caulfield makes no allegations about his not being allowed a Committee hearing, any alterior motives of the Committee or of any benefit or gain to Committee members by their action on his claim.

Caulfield's further contention on this point as to the applicability of ERISA (not in effect here) and language in the Internal Revenue Code controlling the Plan as to his status is not well taken:

> "In absence of any evidence indicating that provisions of the Internal Revenue Code were intended to be used to interpret or define terms of the Plan; said provisions can have no bearing on the rights of employees under the Plan on the theory alone that the employer sought to have a qualified plan."

*Hardy v. H.K. Porter Co.,* 471 F.Supp. at 1185.

In his second point Caulfield raises three sub points. The first sub point is the profit sharing plan constitutes a unilateral contract as modified to conform to the respondent's conduct. He admits the validity of the forfeiture clause as interpreted in *Allredge* and *Grebing, supra,* and that he went to work for a competitor, but claims the Committee's conduct with regard to former employees changed the contract. This point is denied based upon discussion of his first point.

■ He falls back to the position that President Baum's conduct forced his leaving so he didn't leave "voluntarily" therefore the forfeiture clause should not be enforced. Judge Levitt found his leaving voluntary and was not obliged to believe plaintiff's testimony. His determination should stand, *McClelland, supra,* at 96, *Trenton, supra* at 483.

---

**2.** Under *Hardy v. H.K. Porter Co.,* 417 F.Supp. 1175 (E.D.Pa.1976), relied upon by Caulfield the participants to be treated equally must be in substantially identical situations.

**3.** Here, as in *Grebing,* the Employee Retirement Income Security Act, 29 U.S.C. 1001 et seq. (ERISA) was enacted on September 2, 1974 several years after plaintiff's termination of employment.

Caulfield next asserts the prior payment of former employees constituted "an implied waiver of the forfeiture clause". Waiver has been described in *Ehrle, supra,* at 489 as follows:

"[A]n intentional relinquishment of a known right, on the question of which the intention of the party charged with waiver is controlling and, if not shown by express declarations but implied by conduct, there must be a clear, unequivocal and decisive act of the party showing such purpose, and so consistent with the intention to waive that no other reasonable explanation is possible."

It cannot be said the payment of the small amounts to three employees in the 1960's is conduct "so unequivocal" as to waive the written forfeiture provision—the situation is different between the former employees. The trial court's determination on this point is not against the weight of the evidence.

When Caulfield's attorney questioned him about the statements made to him by McCarthy the Company objected on the grounds of hearsay. The objection was overruled and plaintiff was allowed to testify. The court's order treats the statements as hearsay but finds his explanation not to be credible. This is Caulfield's third point. He contends, despite its ruling, the trial court in fact treated this testimony as hearsay. He alleges this should be waived because of McCarthy's position, his statements should come in under the exclusion of an admission of a party opponent, and as such constitute an express waiver of the Plan's forfeiture clause. This overlooks the fact that the court just didn't believe Caulfield's testimony that McCarthy made the statements and further overlooks the fact that even if McCarthy made the statements only members of the Committee could interpret the Plan. McCarthy simply could not unilaterally change the Plan. As to the credibility question on this issue, as noted before, the judge pointed to the equivocal nature of the plaintiff's testimony on McCarthy's statements. The trial court was not obliged to believe Caulfield's testimony, *Trenton, supra,* at 483, and its broad discretionary powers on evidentiary matters, *Potter v.*

*Milbank Manufacturing Company,* 489 S.W.2d 197, 205 (Mo.1972), was not abused here. Caulfield had the burden here of showing McCarthy could bind the Company. Even if Caulfield's testimony as to his conversations with McCarthy were believed and allowed in as an exception to the hearsay rule he simply did not show McCarthy was vested with authority to bind the Company. *Jordan v. Robert Half Personnel Agencies of Kansas City, Inc.,* 615 S.W.2d 574, 584 (Mo.App.1981). As an adjunct to this point Caulfield urges this court to indulge in a presumption that because McCarthy was not called as a witness by the Company his testimony would be unfavorable to the Company. This matter was not presented to the trier of fact and is not well taken, *Edwards v. Zahner,* 395 S.W.2d 185, 191 (Mo.1965).

Plaintiff's fourth point is related to his previous contention, he says the trial court erred in finding the Advisory Committee had exclusive authority to interpret the Plan because the Company had allowed McCarthy to advise employees on the Plan. The only evidence in this case as to any authority of or statement by McCarthy on this Plan came from plaintiff, whose testimony was not found to be credible. This point is denied.

For his final point Caulfield valiantly asserts the Company is estopped from enforcing the forfeiture clause because he relied to his detriment on McCarthy's assurances to him. This point fails too because the trier of fact did not believe his testimony. Plaintiff bore the burden of establishing the waiver and estoppel theory, he did not present evidence sufficient to support same. *General American Life Insurance Company v. Charleville,* 471 S.W.2d 231, 237 (Mo.1971); *Peerless Supply Co. v. Industrial Plumb. & Heat. Co.,* 460 S.W.2d 651, 666 (Mo.1971).

The actions of the Committee cannot be said to be arbitrary, capricious or to have been made in bad faith. After review of

this court tried case its judgment is in all respects affirmed.