Carroll W. STRODE, Respondent,

v.

PAR ELECTRICAL CONTRACTORS, INC., Appellant.

No. WD 38147.

Missouri Court of Appeals, Western District.

Jan. 13, 1987.

Dennis C. Eckold, Kansas City, Mo., for appellant.

Richard F. Lombardo, Kansas City, Mo., for respondent.

Before CLARK, C.J., GAITAN, P.J., and TURNAGE, J.

GAITAN, Presiding Judge.

Defendant-appellant, Par Electrical Contractors, Inc., appeals the judgment of the trial court in favor of plaintiff-respondent, Carroll W. Strode.

The issue presented to the trial court on an amended petition was whether Par Electric, having undertaken to provide group disability insurance coverage, had a duty to update that policy as required under the terms of the plan. The trial court found for plaintiff and awarded damages in an amount equal to the difference between actual payments made to plaintiff under the policy and what plaintiff would have received had the policy been properly maintained, or $16,851.36, plus interest. Defendant appeals, arguing that the trial court's findings were against the weight of the evidence because the policy was provided gratuitously without a contractual obligation between plaintiff and defendant. The judgment of the trial court is affirmed.

Strode was employed by Par Electric from 1962 until becoming permanently disabled on February 10, 1978 when he was involved in a nonwork-related automobile accident. Among other benefits, Par Electric provided Strode with group long-term disability insurance through the National Electrical Contractors Association Group Insurance Trust Fund Plan and John Hancock Mutual Life Insurance Company (the "Insurer"). That policy stated that upon permanent disability through injury or disease, the Employee would receive benefits from the Insurer in an amount equal to 60% of the Employee's base salary as reported to the Insurer by the Employer. The policy also provided, in part, that "An increase in the amount of an employee's monthly income benefit due to a change in salary shall become effective on the first day of the month coincident with or next [day?] following receipt of notice of change by the Trust Fund office, provided the employee is then actively at work, otherwise on the day he returns to active work."

Under the group disability plan, Strode was to receive disability benefits, after a waiting period of three months, equal to 60% of his base salary less Social Security benefits over a five year period. Strode's salary as last reported by Par Electric to the Insurer was $960.00 per month. Therefore, Strode was paid only $6,386.44 by the Insurer. If Par Electric had correctly reported Strode's base salary of $1,447.33 per month, Strode would have been entitled to benefits from the Insurer of $23,238.30. The difference between what Strode would have received had his salary been correctly reported and what he actually received was $16,851.36.

Strode testified that sometime in 1976 he received a copy of a booklet entitled "NECA Members Group Insurance Trust Fund Plan" describing the insurance coverage and he was aware of the existence of the disability policy. Mr. Payton, president of Par Electric, was aware that these booklets were being distributed to the employees.

Subsequently, Strode had a conversation with Mr. Payton regarding his compensation. Strode was told by Mr. Payton that he would receive a raise but that it would not be as much as the union employees would receive. The explanation given by Mr. Payton for not paying Strode as much as union employees was that he was get-

ting fringe benefits that the others didn't have.

Mr. Payton testified that he voluntarily took out the group policy and that he did not think that Strode knew about the policy. Payton stated that the policy was not considered in determining Strode's salary. Payton also denied that he told Strode that Strode's salary would not be as high was union employees because Strode received other benefits.

We review the trial court's judgment under *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), and give deference to the trial court's opportunity to judge the credibility of the witnesses. *Caulfield v. George K. Baum & Co.,* 649 S.W.2d 456, 458 (Mo.App. 1983).

██ A gratuitous noncontributory group insurance plan becomes an enforceable contract upon the employee's notification and knowledge of the benefits, and consideration or continued employment in reliance on the plan. *Ehrle v. Bank Bldg. & Equip. Corp. of Am.,* 530 S.W.2d 482, 491 (Mo.App.1975). Strode testified that he received a booklet describing the plan sometime in 1976, and that he was aware of the existence of the policy. We think this is sufficient to establish that Strode had notice and knowledge of the plan such that his continuation of employment thereafter created a contract binding upon Par Electric. *See Gerson v. Diamond Shamrock Corp.,* 710 S.W.2d 368, 370 (Mo.App. 1986). It is not necessary that Strode prove that he was familiar with all the provisions of the disability policy in order to hold Par Electric to the contract. *See Lutsky v. Blue Cross Hospital Service, Inc.,* 695 S.W.2d 870, 877 (Mo. banc 1985) (no reason why rule that parties are often held to contract provisions which they haven't read, should not also be applied in favor of non-readers as well as against). Strode continued employment after learning of the plan in 1976. Once Strode had knowledge of the plan and continued working for Par Electric, it is proper to conclude that he did so in reliance on the plan.

*Logue v. City of Carthage,* 612 S.W.2d 148, 151 (Mo.App.1981).

We also reject defendant's argument that because defendant could terminate the plan at anytime without notice to the employees, it had no contractual obligation. Defendant did not terminate the plan and plaintiff was disabled and in fact became entitled to benefits under the plan. Once plaintiff became entitled to benefits, defendant could not have deprived plaintiff of those benefits by terminating the plan. *See Ehrle,* 530 S.W.2d at 495. *Burns v. National Lead Co.,* 231 Mo.App. 180, 94 S.W.2d 1126 (1936), cited by defendant is distinguishable in that the employer cancelled the death benefit certification *prior* to the death of the employee and after the employee ceased employment with the employer. We find no merit to defendant's argument that the mere right to terminate the plan indicates that defendant had no contractual obligation to plaintiff.

██ The parties stipulated that the insurance contract required Par Electric to report changes in Strode's salary. When Par Electric allowed Strode's coverage to become inadequate, it breached a contractual obligation to Strode. In *Eisen v. John Hancock Mut. Life Ins. Co.,* 230 Mo.App. 312, 91 S.W.2d 81, 86 (1936), an employer failed to notify the insurer that one employee was entitled to insurance under the master policy. The court stated that,

It appears that the duty of bringing the attention of the defendant to the fact that the employee was entitled to insurance was placed upon the employer by the terms of the policy and that the employee was not to be held responsible for any innocent omission on the part of the employer, in this respect.

Par Electric had a duty to use care and competence in administering the group disability insurance plan. It breached that duty and thereby caused Strode to be damaged.

The judgment of the trial court is affirmed.

All concur.