ADRIAN N. BAKER & CO.,
Plaintiff-Respondent,

v.

Michael DEMARTINO,
Defendant-Appellant.

No. 51856.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 16, 1987.

Jerome A. Diekemper, Clayton, for defendant-appellant.

Mark S. Keiermann, St. Louis, for plaintiff-respondent.

DOWD, Judge.

Defendant, Michael DeMartino, appeals from a decree of the trial court which granted plaintiff-respondent, Adrian N. Baker & Co., a permanent injunction based upon restrictive covenants contained in an employment agreement. We affirm.

The trial court could reasonably have found the following. Defendant was hired in September 1980 as an insurance agent/broker by respondent insurance agency/brokerage firm. Although negotiations took place at the time of employment, the employment agreement (dated September 8, 1980) was not signed until December 1980. The agreement contained the following covenant:

7. *Covenants not to Compete.* Employee hereby agrees that for a period of two (2) years following the termination of his employment by the Agency, whether such termination is voluntary or involuntary, or with or without cause, he will not, directly or indirectly, either as an individual for his own account or as an officer, employee, agent or salesman of any other firm or corporation (a) solicit or write, or aid in the solicitation or writing of, any insurance coverage comparable to or competitive with that offered or written by the Agency for customers who, at the time of such termination, are customers of the Agency. . . .

The agreement also contained a covenant stating that all records remain the property of the Agency and that employees are restricted from using or disclosing confidential information.

Appellant was to receive a forty-five percent commission on all premiums billed. Appellant proved successful and after five years, was earning an income substantially equal to that of the principals of the agency. Appellant was then promoted to assistant vice president in March 1985.

Appellant was asked in January 1985 to accept a new rate of compensation which would have reduced his rate of commission[1] and removed him from the profit sharing plan, but which would have provided him an equity interest in the agency. Appellant rejected the proposal, and in the spring of 1985 an outside consultant was hired to evaluate the agency's business operations. The study concluded that the recent loss of a major account had a severe impact on the agency and it was recommended that the compensation rates be changed in a manner similar to that previously proposed to appellant which he continued to oppose.

Appellant was terminated on October 22, 1985. He contends the termination was due to his refusal to accept a reduction in compensation. Respondent contends the termination was due to appellant's poor relations with and mistreatment of several underwriters and staff at the agency, and his copying and removal of files contrary to agency policy and in violation of the employment agreement.

After his termination, appellant contacted some of his former customers (and thus, respondent's customers) and told them generally that he was still in the insurance business, that he had been fired by respondent's firm, that he was subject to a covenant not to compete, that it was being litigated, and that he would talk to them as soon as possible.

Respondent then filed a petition on November 4, 1985 alleging appellant had vio-

1. Appellant would have received thirty percent on old business and fifty percent on new business.

lated the covenant not to compete and had taken confidential records. A temporary restraining order was granted. Appellant subsequently filed an answer and counterclaim requesting a declaratory judgment that the covenant not to compete is invalid and unenforceable and requested damages for breach of contract for failure of respondent to pay commissions owed appellant. Additional hearings were held and a preliminary injunction issued on December 20, 1985. Following further hearings in March and April, the permanent injunction from which appellant appeals was entered May 30, 1986. Appellant was denied relief on the request for a declaratory judgment and was awarded $790.29 for an unpaid commission on a life insurance policy. Respondent does not appeal the award.

Appellant makes the following contentions: (1) The trial court erred in holding appellant violated the employment agreement in contacting respondent's customers in that such contacts did not constitute solicitation as prohibited by the agreement; (2) The trial court erred in holding that respondent could enforce the covenant not to compete in that respondent was the first to breach the employment agreement when it failed to pay appellant the correct amount of commissions due him; (3) The trial court erred in holding the covenant enforceable in that respondent did not have good cause to discharge appellant; (4) The trial court erred in not holding that enforcement of the covenant is inequitable.

Appellate review of a court tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The trial court's determination will not be disturbed on appeal "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy, supra,* at 32. "Although the evidence might support a different result, we give deference to the trial court's conclusion." *Forms Mfg. Inc. v. Edwards,* 705 S.W.2d 67, 68 (Mo.App. 1985).

Appellant contends in his first point the trial court erred in finding appellant's contacts with his former customers to be a form of solicitation.

Solicitation was defined in *Bittiker v. State Bd. of Registration for the Healing Arts,* 404 S.W.2d 402 (Mo.App.1966), which involved the revocation of a physician's license pursuant to a statute which prohibited the solicitation of patronage by a physician. The court found "soliciting" to be a nontechnical word and stated that in construing nontechnical words and phrases, statutory words must be given their plain or ordinary meaning. Likewise, language contained in a covenant not to compete "will be considered according to the plain, ordinary and usual meaning of the words and phrases it contains...." *Wineteer v. Kite,* 397 S.W.2d 752, 755 (Mo.App.1965). "Soliciting" is construed in *Bittiker* "as meaning to ask for or to request some thing or action in language which convinces that the asking or requesting is being done in earnest and that the solicitor wants results." *Bittiker, supra,* at 405. Similarly, Black's Law Dictionary defines "solicit" as: "To appeal for something; to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving."

When appellant contacted his former customers he told them that he liked doing business with them, that he would like to do business with them again in the future once the litigation as to the covenant was resolved, that he was still in the insurance business, that he was affiliated with another agency, that he would talk to them as soon as he was able, and that he would keep in touch with them as to his status. He also told some customers that he had been fired because he refused to take a cut in pay and that respondent had treated him unfairly.

Although appellant did not write any coverage for these customers, we do not find it "against the weight of the evidence" for the trial court to find these contacts constituted solicitation. The agreement prohibits indirect as well as direct solicitation. It is clear that in making these contacts appellant sought to maintain and establish further goodwill with these customers as a basis for future business. We therefore

find substantial evidence in these contacts to support the trial court's determination that appellant violated the covenant not to compete.

Because we affirm the trial court's finding of solicitation, it is not necessary for us to decide the correct interpretation to be afforded *Osage Glass Inc. v. Donovan*, 693 S.W.2d 71 (Mo. banc 1985), as it relates to a showing of breach prior to the issuance of an injunction. Also, appellant's reliance on *Aetna Bldg. Maintenance Co. v. West*, 39 Cal.2d 198, 246 P.2d 11 (1952), is misplaced for two reasons. The covenant at issue was held to be too vague and the case was ultimately tried on a theory of unfair competition and, as previously stated, appellant's contacts went beyond that of "merely informing customers of one's former employer of a change of employment." We note additionally that we are not compelled to adopt the decisions of another state. Point denied.

Appellant contends in his second point the trial court erred in enforcing the covenant in that respondent was the first to breach the employment agreement. Appellant makes several allegations of breach, all of which address the manner in which appellant's final bonus commission was calculated.

Appellant relies on *Forms Mfg. Inc. v. Edwards*, 705 S.W.2d 67 (Mo.App.1985), which holds that if a company breaches an employment agreement before an employee violates a covenant not to compete, the company is then barred from enforcing the covenant. *Forms, supra*, at 69. This principle is derivative of the rule set out in *Rexite Casting Co. v. Midwest Mower Corp.*, 267 S.W.2d 327, 333 (Mo.App.1954), that: "A party to a contract cannot claim its benefits where he is the first to violate it." However, "[t]he *Rexite* statement ... is limited to material failures of performance." *Stokes v. Enmark Collaborative*, 634 S.W.2d 571, 573 (Mo.App.1982). Thus, the question of whether an employer is precluded from enforcing a covenant not to compete as a result of its own breach is "largely an issue of fact for the trial court." *Forms, supra*, at 69.

■ We disagree with appellant's contention on two grounds. The first is that we find no error in the trial court's finding that appellant improperly removed confidential papers from the respondent's firm and thus, was the first to breach the agreement. There was testimony from another employee of respondent that appellant was often seen copying policies from the firm's files after regular business hours and that this occurred with greater frequency during the months of August through September of 1985. Appellant's assistant testified appellant came into the office the week following his termination and asked that he be given the prospect files on his assistant's desk. When she refused he suggested she take them home and turn them over to him there. She again refused. She also testified appellant told her he considered breaking into the office to take his files. Appellant admitted he asked his assistant to make copies of some of the files and that she refused.

We find substantial evidence in the testimony of these witnesses to support a finding that appellant obtained files and customer information in violation of his employment agreement.

Because these activities, as well as the contacts previously held to be solicitation, occurred prior to the date the commissions accrued, appellant's contention that the employer was the first to breach must fail.

Secondly, appellant has made no showing that respondent's alleged breach was material.

■ A review of the testimony of the respondent's comptroller convinces this court that respondent made a good faith effort to pay appellant his earned commission according to the terms of the contract. As to the commission the trial court assessed against the respondent for a life insurance policy, there is no evidence in the record to indicate that respondent ever received the commission check. The issuer testified the check has neither been returned to his office nor cashed. We cannot, therefore, characterize respondent's failure to pay appellant his share of the

commission as material and thus, we affirm the trial court's finding that it was an inadvertent error. *Point denied.*

Appellant contends in his third point the trial court erred in holding the covenant enforceable in that respondent did not have good cause to discharge appellant and thus, under the doctrine of "unclean hands" is barred from enforcement of the covenant not to compete.

We recognize that a court of equity will not aid a plaintiff who comes into court with "unclean hands" and that "one who has engaged in inequitable activity regarding the very matter for which he seeks relief will find his action barred by his own misconduct." *Mahaffy v. City of Woodson Terrace*, 609 S.W.2d 233, 238 (Mo.App. 1980). We disagree, however, with appellant's contention that respondent did not have sufficient good cause to discharge appellant such that the principle of "unclean hands" should be invoked against respondent.

There is considerable evidence in the record to support the trial court's determination that respondent had good cause to discharge appellant. There was testimony from several of respondent's principals that complaints had been received from underwriters and that one company had refused to handle any of appellant's accounts. A branch manager for one of the companies testified it was not in their best interest to do business with appellant and that they had to be more cautious and thorough with appellant's accounts because they didn't trust the information they received from him. There was testimony appellant had a "pattern of pushing and berating the underwriters" and appellant was also described as exercising poor judgment in his treatment of the underwriters. There was, therefore, some concern on the part of respondent's principals that appellant's behavior would harm respondent's reputation. There was also ample testimony that goodwill is a critical factor in the insurance industry, thus justifying the concern on the part of respondent's principals.

The record discloses that appellant was equally as difficult within the firm. There was much testimony appellant screamed and yelled at various employees of respondent to the point where his assistant described him as "on the verge of violent" when yelling at her. A principal of respondent testified appellant became increasingly difficult and that "[h]e was demanding, overbearing, abusive, rude to them, which is something he [appellant] finally admitted and apologized for." Testimony by one of the principals further revealed that appellant's "basic opinion was that he didn't mistreat the employees, so that he went on and continued to holler at other employees of the company."

Several witnesses also testified that appellant's behavior resulted in morale problems within the firm and that he was "always complaining" and commented that if he left the firm he would "make a big dent in the agency." One of the principals also testified that appellant had breached his confidences.

It is clear from our review of the record that there is substantial evidence to support the trial court's finding that respondent had good cause to discharge appellant and thus, we find appellant's contention that respondent should be barred from recovery based on the doctrine of "unclean hands" to be without merit. Point denied.

Appellant contends in his final point the trial court erred in finding it would not be unconscionable, unreasonable or inequitable to enforce the covenant not to compete in "light of the circumstances surrounding the signing of the employment agreement, respondent's conduct, appellant's financial condition, and the market conditions prevailing at the time of appellant's discharge."

Appellant contends the parties were not of equal bargaining power and that he was presented with "what amounted to a contract of adhesion." All three principals of respondent testified appellant was told at the time of the negotiations he would be required to sign a covenant not to compete. Although the agreement was not officially signed until December, appellant was made aware prior to beginning employment what

the conditions of his employment would be. Appellant also ultimately received a commission percentage of forty-five percent; ten percent more than the principals were receiving. If the conditions were unsatisfactory appellant could have sought employment elsewhere. Our review of the record does not disclose any "circumstances surrounding the signing of the employment agreement" that would render its enforcement inequitable.

Secondly, appellant points to respondent's conduct. We have addressed this issue in the previous point and affirmed the trial court's finding that respondent had just cause to discharge appellant.

 Thirdly, appellant points to his financial condition. The record discloses, however, that his poor financial condition was in large part of his own making. Testimony revealed that he lost approximately $80,000.00 in a six-to-eight month period in 1985 while speculating in the commodities market. In addition, when he was discharged by Baker, he chose to accept a position that paid on a commission only basis. He took the risk when he accepted a position without a guaranteed salary. Finally, in the year prior to his discharge he earned in excess of $110,000.00. We therefore find that appellant's weakened financial condition does not support his contention that it would be inequitable to enforce the covenant.

Lastly, appellant points to the market conditions which were indisputably "tight." There was, however, testimony from a broker of respondent that he had been able to place new business despite the "tight" market, and a principal of respondent testified that approximately forty percent of their business in the previous six months had been new business. The record further disclosed that despite "tight" market conditions, there are thousands of potential customers in the St. Louis area and that new business is being written.

We agree that covenants not to compete are "enforceable only if their imposed restraint is reasonable." *Grebing v. First Nat. Bank of Cape Girardeau,* 613 S.W.2d 872, 874 (Mo.App.1981). Appellant

has not, however, persuaded this court that circumstances exist such that enforcement of the covenant is unreasonable or that the trial court was in error in not finding enforcement of the covenant to be inequitable. Point denied.

There is substantial evidentiary support for the court's findings. The judgment is affirmed.

SMITH, P.J. and REINHARD, J., concur.