**OZARK APPRAISAL SERVICE, INC., Plaintiff/Appellant,**

v.

**Kimberly NEALE, Defendant/Respondent.**

No. 24141.

Missouri Court of Appeals, Southern District, Division One.

Feb. 20, 2002.

Wendy E. Garrison, Neosho, for Plaintiff–Appellant.

George R. Spence, Clark and Spence, Bentonville, for Defendant–Respondent.

Before SHRUM, P.J., MONTGOMERY, J., and BARNEY, C.J.

KERRY L. MONTGOMERY, Judge.

Ozark Appraisal Service, Inc., (Plaintiff) appeals from an adverse judgment on its claim involving a non-compete agreement with its former employee, Kimberly Neale (Defendant). Plaintiff filed a petition seeking a permanent injunction enforcing the parties' covenant not to compete. Defendant filed a counterclaim seeking compensation for work done while employed by Plaintiff. The trial court denied the request for a permanent injunction and ordered Plaintiff to pay Defendant damages in the amount of $13,911.20 on her counterclaim. In this appeal, Plaintiff submits three Points Relied On. The first two points challenge the trial court's denial of Plaintiff's request for a permanent injunction, and the third point challenges the award of damages.

We view the evidence in the light most favorable to the trial court's judgment and set forth the facts in that manner. Scott Dennis is the sole shareholder of Plaintiff. Since its inception in 1989, Plaintiff has been in business to appraise the fair market value of real estate and chattels in portions of Missouri and Arkansas. On July 25, 1995, Plaintiff hired Defendant to work as an apprentice under a supervising appraiser. While apprenticing, Defendant worked 2000 hours over a two-year period and attended classes at Lifetime Learning in Springfield, Missouri. In 1998 Defendant passed the state examination in Missouri. She then became a certified appraiser in both Missouri and Arkansas.

When Defendant began her employment with Plaintiff, she was paid an hourly wage. In the fall of 1995, Plaintiff began paying Defendant 50 percent of each appraisal she completed. The following December Defendant began working out of her home in Bentonville, Arkansas, instead of going into the office. She built an office onto her home and used Plaintiff's tele-

phone number and post office box at her home office. Prior to her certification as an appraiser, Defendant would travel to Plaintiff's office in Pineville, Missouri, to pick up orders. She would return the completed appraisals for a certified appraiser to review and sign. In the fall of 1997, Plaintiff made Defendant a partner in the company. Thereafter, Defendant was paid 90 percent of each appraisal she completed.

During December of 1996, Defendant was informed she was required to sign a document entitled "Business Agreement" or she would be fired. The agreement included a covenant not to compete that provided:

> It is recognized that [Plaintiff] does not desire to train appraisers and then allow them to leave as soon as they are either licensed or certified and go into direct competition with [Plaintiff]. By the same token, [Defendant], does not want to be released from employment with [Plaintiff] and then not be allowed to continue to work as a Real Estate Appraiser in the Four State area.

> It is also recognized the [Plaintiff] has a "vested" interest in protecting its "trade secrets, clientele lists, business contacts and appraisal methods, including formulations, etc.", and [Defendant] has a "vested" interest in continuing her career as a Real Estate Appraiser in the Four–State area.

> Therefore, [Defendant] agrees that, upon [her] departure from [Plaintiff] for any reason, he/she will [not] practice as an appraiser for a period of one (1) year, within 95 miles from any [office operated by Plaintiff], unless agreed by both parties.

> . . . .

> Further, [Plaintiff] agrees that [Defendant] can only be dismissed as an employee or partner if violation of any of the following occurs:

> (1) Stealing, misrepresentation of the company, or any behavior which would be considered unprofessional, unscrupulous or unprofessional by any reasonable person.

Rather than leaving her job, Defendant signed the agreement.

In 1999 Plaintiff adopted a centralized accounting system. Plaintiff did not charge appraisers for the use of the accounting system during a one-year trial period, but at the end of January 2000, Defendant received a bill in the amount of $253 for her share of the accounting system for that month. Defendant was not pleased with the new system because she felt it was inaccurate and had many errors.

In March of 2000, the partners had a meeting in which they discussed the use of the centralized accounting system. Defendant voiced her objection to the use of the system. Defendant's objection led to a "heated discussion," including "screaming, ranting and raving" by Scott Dennis. Plaintiff informed Defendant she would use the accounting service "or else." When Defendant informed Dennis that one of her employees also objected to the system, Dennis told her that employee was fired. At that point, Defendant gathered her things and left.

Plaintiff never informed Defendant that she was fired but did order her business phone to be turned off. Plaintiff also had the lock changed on the post office box that Defendant used to receive her personal and business mail. The mail, including Defendant's personal mail, was then forwarded to Plaintiff's office in Pineville, Missouri. Plaintiff refused to give Defendant her mail until the day of the hearing.

After the business relationship between Plaintiff and Defendant ended, Defendant

continued to work out of her home office under the name of Appraisal Express of Northwest Arkansas. Defendant removed all software provided by Plaintiff from her computer and purchased software for her new business. She sent letters to clients regarding her change in business and informing them she had new, lower rates. There is no dispute that Defendant was operating her new business within the prohibited 95 mile radius of one of Plaintiff's offices.

At the time her employment with Plaintiff ended, Defendant had completed some appraisals on Plaintiff's behalf and was in the process of completing others. Defendant testified that Plaintiff owed her money for several of these appraisals. Her counterclaim included a request for compensation for this work.

On April 24, 2000, Plaintiff filed for a temporary restraining order to prohibit Defendant from working as an appraiser under the terms of the covenant not to compete. The court granted the temporary restraining order and extended it twice thereafter. Following a hearing on the matter on June 26, 2000, the trial court entered an order granting a temporary injunction that prohibited Defendant from working as an appraiser within 95 miles of Plaintiff's offices.

On July 24, 2000, a trial was held on all the issues. After hearing testimony, the trial court found that "Plaintiff unilaterally attempted to modified [sic] the working agreement between it and the Defendant requiring all accounting or bookkeeping of the Defendant be done by the Plaintiff." The trial court concluded that because Plaintiff had unilaterally changed the working agreement between the parties to the detriment of Defendant, it could not enforce the covenant not to compete. Based upon this reasoning, the trial court entered judgment in Defendant's favor on Plaintiff's petition for a permanent injunction.

The court further found that Plaintiff had collected payment for appraisals made by Defendant. The court determined that Plaintiff owed Defendant a total of $ 13,911.20 and entered judgment in Defendant's favor in that amount on her counterclaim.

██ Plaintiff appeals the denial of its petition for a permanent injunction and the monetary award to Defendant. Plaintiff complains that the judgment of the trial court was unsupported by substantial evidence or was based upon a misapplication of the law. This court-tried case is governed by the principles set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc.1976). Accordingly, we shall uphold the judgement unless it is against the weight of the evidence, erroneously declares the law, or erroneously applies the law. *Silvers, Asher, Sher & McLaren v. Batchu,* 16 S.W.3d 340, 343 (Mo.App.2000). We will only disturb a trial court's decision concerning the issuance of a permanent injunction on the grounds that it is against the weight of the evidence with great caution and the firm belief that it is wrong. *Id.*

In its first two points on appeal, Plaintiff challenges the trial court's decision not to grant a permanent injunction against Defendant. In Point I, Plaintiff maintains the trial court erred in failing to issue a permanent injunction because the evidence established the covenant not to compete was reasonable and had a legitimate protectable interest. Plaintiff's second point contends the trial court erroneously denied the petition for a permanent injunction based upon its determination that Plaintiff had unilaterally changed the working agreement to Defendant's detriment. Be-

cause we find Point II to be dispositive of the issue, we address it first.

In this point, Plaintiff challenges the trial court's finding that it had unilaterally modified its contract with Defendant by implementing the uniform accounting system and requiring her to use it at her expense "or else." Plaintiff acknowledges that by the terms of the Business Agreement signed by the parties, Defendant could only be dismissed if she stole, misrepresented the company, or exhibited behavior that could be considered unprofessional, unscrupulous, or unprofessional by any reasonable person. However, Plaintiff maintains the evidence failed to establish that Defendant was fired. Plaintiff further contends that the costs associated with using the accounting system would have been "miniscule" in comparison with Defendant's income so that requiring her to use the system did not amount to a unilateral change in the agreement.

■■■ "Generally because covenants not to compete are considered restraints on trade, they are presumptively void and are enforceable only to the extent that they are demonstratively reasonable." *Armstrong v. Cape Girardeau Physician Assocs.*, 49 S.W.3d 821, 825 (Mo.App.2001). A permissible purpose of a non-compete agreement is to protect an employer against unfair competition by a former employee without imposing unreasonable restraint on the former employee. *Id.* The burden of demonstrating the validity of a covenant not to compete is on the party seeking enforcement. *Id.*

■■■ In addition, where an employer breaches an employment agreement, it is barred from seeking enforcement of a covenant not to compete. *Luketich v. Goedecke, Wood & Co., Inc.*, 835 S.W.2d 504, 507 (Mo.App.1992). A party to a contract cannot seek to enforce its benefits where he is the first to violate its terms. *Id.* "[T]he question of whether an employer is precluded from enforcing a covenant not to compete as a result of its own breach is 'largely an issue of fact for the trial court.'" *Ballesteros v. Johnson*, 812 S.W.2d 217, 222 (Mo.App.1991) (quoting *Adrian N. Baker & Co. v. DeMartino*, 733 S.W.2d 14, 17 (Mo.App.1987)). In reviewing the evidence, we grant great deference to the trial court's superior opportunity to observe the parties while testifying, assess their credibility, and weigh their sincerity of character. *Luketich*, 835 S.W.2d at 507.

■■ In the instant case, the trial court did not make a direct finding that Plaintiff terminated Defendant's employment when she balked at using the uniform accounting system. The court did, however, determine that Plaintiff informed Defendant she would use the system and be assessed a monthly cost for such use "or else." On matters where the trial court does not make a direct finding we deem the issue found in accordance with the result reached. *Thompson v. St. John*, 915 S.W.2d 350, 356 (Mo.App.1996). A finding that Plaintiff terminated Defendant's employment after the meeting in March 2000 is consistent with the result reached. Accordingly, we shall proceed as if the trial court had made such a finding.[1]

After hearing the testimony of the parties, the trial court determined that Plaintiff's demand, coupled with the "or else" threat, amounted to a unilateral change in

---

1. This Court is primarily concerned with the trial court reaching the right result as opposed to the route taken by the trial court to reach that result. *Business Men's Assurance Company of America v. Graham*, 984 S.W.2d 501, 506 (Mo. banc 1999). Therefore, we will affirm the judgment under any tenable theory regardless of whether the trial court advances wrong or insufficient reasons. *Id.*

the employment contract. There was ample evidence to suggest Plaintiff terminated Defendant's employment after she objected to Plaintiff's demands concerning the accounting service. The evidence showed that after the meeting in March of 2000, Plaintiff had its business number removed from Defendant's phone. It also changed the lock on the post office box where Defendant received both her personal and business mail. Finally, Plaintiff kept Defendant's personal mail in its possession until required to turn it over by the court.

By the terms of the Business Agreement, Defendant could only be dismissed as a partner under certain conditions. Specifically, she could only be fired for "stealing, misrepresentation of the company, or any behavior which would be considered unprofessional, unscrupulous or unprofessional by any reasonable person." There was no evidence that any of these conditions were present when Defendant's employment was terminated for her failure to acquiesce to Plaintiff's demand that she adopt and pay for the uniform accounting service.

■ Thus, we find substantial evidence to support the trial court's finding that Plaintiff materially breached the employment agreement and was therefore not entitled to enforce the covenant not to compete. Point II is denied. This determination makes any issue moot under Point I as to the validity of the covenant. Accordingly, that portion of the judgment denying the petition for a permanent injunction is affirmed.

In its final point on appeal, Plaintiff maintains the trial court erred in finding in favor of Defendant on her counterclaim and awarding her $13,911.20. Plaintiff contends the amount was based upon an improperly admitted exhibit and exceeded the amount requested in Defendant's

pleadings. Defendant concedes the trial court's calculations were erroneous and suggests the judgment be amended to reflect the evidence presented at trial.

In her counterclaim, Defendant asked the court to award her damages for unpaid wages in the amount of $9,920. At trial, Defendant presented evidence, including two exhibits, indicating that she had completed numerous appraisals for which Plaintiff had been paid but for which she had not been compensated. Exhibit 6 was a list compiled by Defendant of outstanding fees for appraisals completed while she was still in Plaintiff's employment. Exhibit 6 indicated a balance owed of $8,562.50 and was admitted without objection.

Defendant's Exhibit 7 consisted of a list of outstanding fees for appraisals that Defendant had completed after leaving Plaintiff's employment. Defendant claimed Plaintiff had received payment for these appraisals when it had her mail forwarded to Plaintiff's office but had failed to remit the money it received to her. Exhibit 7 indicated that Plaintiff caused Defendant to miss payments for appraisals in the amount of $3,568. Defendant testified that she had compiled Exhibit 7 for trial, and it was a summary of her billing records. Plaintiff objected to the admission of this exhibit on the basis of hearsay and improper foundation. The trial court overruled the objection, and the exhibit was admitted into evidence.

The trial court entered judgment in Defendant's favor in the amount of $13,911.20. It is unclear how the trial court reached this amount. Defendant concedes that even if the amounts in Exhibits 6 and 7 are added together the total only equals $12,130.50. Defendant maintains the trial court intended to add the two exhibits together to reach a result and suggests that this Court should amend the

judgment to reflect this amount. Conversely, Plaintiff contends that the damages portion of the judgment should be reversed because Exhibit 7 was erroneously admitted into evidence and the award exceeded the amount requested in the pleadings.

First, we address the admission of Exhibit 7. This exhibit was compiled by Defendant for use at trial and includes a summary of appraisals performed by her after she left Plaintiff's employment. It consists of a list of client names, billing dates and the amount billed. Defendant asserted that this list reflected the amount of damages caused by Plaintiff "taking [her] mail, and keeping [her] mail from [her]." Defendant testified that she had made the summary based upon information she had taken from her office files. Plaintiff objected to the admission of Exhibit 7 on the basis of hearsay and improper foundation. Defendant claims the exhibit was properly admitted as a business record.

■■■■ A number of foundational requirements must be met before a document may be received into evidence, including relevancy, authentication, the best evidence rule, and hearsay. *Estate of West v. Moffatt*, 32 S.W.3d 648, 653 (Mo. App.2000). "The authenticity of a document cannot be assumed, and what it purports to be must be established by proof." *Id.* "The purpose of the hearsay rule is to ensure documents admitted in evidence are trustworthy by giving the party against whom the documents are offered the opportunity to cross-examine the preparer or proper custodian of the documents." *State ex rel. Hobbs v. Tuckness*, 949 S.W.2d 651, 653 (Mo.App.1997). "The determination of whether a sufficient foundation was laid for admission of the evidence is within the sound discretion of the

trial court." *Estate of West*, 32 S.W.3d at 653.

■■■ Section 490.680 sets forth the business records exception to hearsay:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, *and if it was made in the regular course of business*, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

(Emphasis added). Therefore, under this statute, where a business regularly uses computer equipment to enter and store its business records, printouts of the records are admissible if the entries reflected are made in the regular course of business at or reasonably near the time of the occurrences of the events they record, and the trial court is satisfied that the sources of the information and mode and time of preparation indicate trustworthiness and hence justify admission. *Estate of West*, 32 S.W.3d at 653.

■■■ In the instant case, however, Exhibit 7 was not made in the regular course of business. Defendant conceded that she compiled the exhibit for trial purposes and it was merely a summary of her business records. Although a summary of voluminous records may be admissible in some circumstances, the competency of the underlying records must first be established, and such records must be made available to the opposite party for cross-examination purposes. *State v. Garrette*, 699 S.W.2d 468, 500 (Mo.App.1985). There is no indication in the record that Defendant introduced her business records into evidence or made them available to Plaintiff for cross-examination purposes. Plaintiff's objection to the admission of

Exhibit 7 on the basis of hearsay and improper foundation had merit, and the exhibit should not have been admitted into evidence.

■ However, "[t]he admission of evidence claimed to be hearsay is reversible error only if the complaining party is prejudiced." *City of Rolla v. Armaly*, 985 S.W.2d 419, 424 (Mo.App.1999). A complaining party cannot be prejudiced by the introduction of challenged evidence where that evidence is merely cumulative to other admitted evidence of like tenor. *Id.* Here, Defendant testified that $3,586 was the amount of compensation she lost based upon the interception of her mail. Plaintiff did not object to this testimony. Therefore, Exhibit 7 was cumulative to Defendant's live testimony, and Plaintiff was not prejudiced by its erroneous introduction into evidence.

■ However, Plaintiff's contention that the award was unsupported by the evidence has merit. At trial, the evidence established that Defendant's damages were, at most, $12,130.50. Dennis Scott testified that Plaintiff owed Defendant $3,586. Defendant's testimony and exhibits reflected a total of $12,130.50 for unpaid compensation and damages for the interception of her mail. Although a trial court has the prerogative to make a finding within the range of amounts testified to at trial, in this instance the judgment exceeded the outer limits of that range. *Kickham v. Gardocki*, 966 S.W.2d 361, 362 (Mo.App.1998). There was insufficient evidence to support the trial court's award of $13,911.20.

Defendant urges this Court to amend the judgment to reflect her belief that the trial court merely made an error when adding together the amounts in Exhibit 6 and Exhibit 7. Because we are unsure how the trial court reached the final figure in the judgment, we decline to substitute our judgment for that of the trier of fact. Accordingly, we grant Plaintiff's Point III.[2]

We affirm that portion of the judgment denying a permanent injunction. We reverse that portion of the judgment awarding Defendant $13,911.20 damages and remand the cause for entry of an appropriate damage award to Defendant on her counterclaim.

SHRUM, P.J., and BARNEY, C.J., concur.

---

2. Because we reverse the damage award, we decline discussion of the remaining conten-

tions under this point.